**SHOOK, HARDY & BACON L.L.P.**
Rodrigo E. Salas (SBN 194462)
rsalas@shb.com
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415.544.1900 | Fax: 415.391.0281

Karyn L. Ihara (SBN 298950)
kihara@shb.com
Angelica S. Anguiano (SBN 357666)
aanguiano@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: 424.285.8330 | Fax: 424.204.9093

Arlene Bakirci (SBN 342772)
abakirci@shb.com
5 Park Plaza, Suite 1600
Irvine, California 92614
Tel: 949.475.1500 | Fax: 949.475.0016

*For e-service include: eservice@shb.com*

Attorneys for Defendant
GENERAL MOTORS LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN R. LOREDO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC, a Delaware Limited Liability Company, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 8:25-cv-02115-MRA-KES<br><br>Judge: Hon. Monica Ramirez Almadani<br><br>**DEFENDANT GENERAL MOTORS LLC'S OPPOSITION TO MOTION FOR REMAND**<br><br>Hearing Date: November 24, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9B<br><br>Complaint Filed: sAugust 14, 2025<br>Removal: September 18, 2025 |

## TABLE OF CONTENTS

Page


INTRODUCTION ........................................................................................ 1

BACKGROUND FACTS ................................................................................ 4

I. LEGAL STANDARD ................................................................................ 4

II. A PREPONDERANCE OF THE EVIDENCE SHOWS THAT THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 .................................. 5

A. Actual Damages .................................................................................. 5

B. Proof of Liability Is Not a Prerequisite to Including Civil Penalties in the Amount in Controversy ................................................................ 7

C. Civil Penalties .................................................................................... 10

D. Attorney’s Fees .................................................................................. 11

CONCLUSION ........................................................................................... 11

## TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Arias v. Residence Inn*,
936 F.3d 920 (9th Cir. 2019) ........ 7, 10

*Brady v. Mercedes-Benz USA, Inc.*,
243 F.Supp.2d 1004 ........ 7, 8

*Breuer v. Jim's Concrete of Brevard, Inc.*,
538 U.S. 691 (2003) ........ 3

*Carnegie-Mellon University v. Cohill*,
484 U.S. 343 (1988) ........ 4

*Chavez v. JPMorgan Chase & Co.*,
888 F.3d 413 (9th Cir. 2018) ........ 5, 9

*Conrad Associates v. Hartford Accident & Indemnity Company*,
994 F.Supp. 1196 (N.D. Cal. 1998) ........ 8, 9

*De Aguilar v. Boeing Co.*,
47 F.3d 1404 (5th Cir. 1995) ........ 8, 9

*Ehrman v. Cox Communs., Inc.*,
932 F.3d 1223 (9th Cir. 2019) ........ 5

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
899 F.3d 785 (9th Cir. 2018) ........ 10

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696 (9th Cir. 2007) ........ 4, 5, 8

*Harris v. Bankers Life & Cas. Co.*,
425 F.3d 689 (9th Cir. 2005) ........ 1, 3, 4

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
707 F.3d 1136 (9th Cir. 2013) ........ 1, 2

*Lowdermilk v. U.S. Bank National Ass'n*,
479 F.3d 994 (9th Cir. 2007) ........ 8

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
720 F.3d 1121 (9th Cir. 2013) ........ 2, 3

*Sandoval v. GM LLC*,
No. 2:25-cv-06551-DSF-SSC, 2025 U.S. Dist. LEXIS 195478 (C.D. Cal. Sept. 15, 2025) .......... 11

*Schneider*, 756 Fed. Appx. 699 .......... 6

*Schneider v. Ford*,
756 Fed. App'x. 699 (9th Cir. 2018) .......... 6

*Shamrock Oil & Gas Corp. v. Sheets*,
313 U.S. 100, 85 L. Ed. 1214, 61 S. Ct. 868 (1941) .......... 3

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*,
303 U.S. 283 (1938) .......... 8

*Stupin v. Gen. Motors LLC*,
No. 2:23-cv-06943-SVW-MAA, 2024 WL 811706 (C.D. Cal. Feb. 27, 2024) .......... 5

*Terry v. Service America Corp.*,
990 F.Supp. 476 (N.D. Mass. 1997) .......... 8

**Other State Cases**

*Makol v. Jaguar Land Rover N. Am., LLC*,
No. 18-cv-03414-NC, 2018 WL 3194424 (C.D. Cal. June 28, 2018) .......... 7, 8

*Munoz Melendrez v. General Motors LLC, et al.*,
No. 2:25-cv-07019-DMG-PVC, Dkt. 15 (09/16/2025 Plaintiff's Motion to Remand) .......... 1

*Zawaideh v. BMW of North Am., LLC*,
No. 17-CV-2151 .......... 7, 8, 9

**Federal Statutes**

28 U.S.C.
§ 1332 .......... 4
§ 1441 .......... 3

**California Statutes**

Cal. Code Civ. Proc
§ 871.27 .......... 6

§ 1793.2 .......... 5
§ 1794 .......... 10

Song-Beverly Act .......... *passim*

**Other Authorities**

California Assembly Bill 1755 .......... 6

## INTRODUCTION

In the past two months, Plaintiff's counsel here has filed dozens of motions to remand premised on the argument that GM's removals were *too late* because subject matter jurisdiction was determinate on the face of nearly identical complaints to the Complaint at issue here. *See, e.g., Edgar I. Ortiz v. General Motors LLC, et al.*, No. 5:25-cv-01921-MRA-JPR, Dkt. 13 (08/15/2025 Plaintiff's Motion to Remand). Most courts in this district have swiftly rejected that argument, holding those complaints lacked the necessary information to determine citizenship and the amount in controversy. Now, Plaintiff's counsel has made an about-face and argues GM's removal is *too early* because the amount in controversy is too speculative based on the ambiguous allegations in the Complaint. This final evolution of Plaintiff's counsel's saga of motions to remand brings the Catch-22 dilemma articulated in *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005) and *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013) full circle. Plaintiff's counsel is making the most of the discordant treatment of the amount in controversy analysis in this Circuit, alongside ambiguous pleadings, to deliver a motion to remand in *every* case that GM removes. It does not matter when GM removes and, as this Motion demonstrates, it does not matter how much is in controversy—Plaintiff's counsel believes the law gives a basis to remand in every case, so long as the jurisdictional facts they know to be true are not pled on the face of the Complaint.

As GM has noted previously in its oppositions to Plaintiff's counsel's first wave of motions to remand arguing removal was too late, this Circuit has identified an elegant solution to this dilemma—one that avoids the "cottage industry of removal litigation" that the parties and the courts are currently embroiled in. That solution is the bright line rule articulated in *Harris* and reiterated in *Kuxhausen*:

> In *Harris*, a non-CAFA case, the plaintiffs made a similar demand. They argued that the defendant "should have looked in its files within the first thirty days" to discover that a named defendant whose presence in the suit

> frustrated complete diversity of citizenship had died, and therefore should have recognized that the case was immediately removable under 28 U.S.C. § 1332(a). *Harris*, 425 F.3d at 696. Preferring a clear rule, and unwilling to embroil the courts in inquires "into the subjective knowledge of [a] defendant," we declined to hold that materials outside the complaint start the thirty-day clock. *Id*. at 695 (quoting *Lovern v. Gen. Motors Corp*., 121 F.3d 160, 162 (4th Cir. 1997)). Applying that principle here, we conclude that BMW was not obligated to supply information which Kuxhausen had omitted.

*Kuxhausen*, 707 F.3d at 1141.

Here, Plaintiff refuses to plead the amount he seeks. Indeed, in his Motion challenging the amount in controversy, Plaintiff does not state that he is seeking less than $75,000 but, rather, that Defendant cannot prove he is seeking more than $75,000. And with that, Plaintiff takes his seat in the audience as the dramatic irony unfolds between this Court and GM—as Plaintiff is the only party here who knows for certain whether he is seeking more than the jurisdictional threshold. Recognizing this asymmetry of information leads to perverse incentives, the Ninth Circuit has determined that Plaintiff should bear the cost of his indeterminate pleadings:

> The fact remains, however, that we "don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove." *Durham*, 445 F.3d at 1251. This principle helps avoid a "Catch-22" for defendants desirous of a federal forum. **By leaving the window for removal open, it forces plaintiffs to assume the costs associated with their own indeterminate pleadings.** That is only fair after all, because—even under CAFA—"the burden is on the party removing the case from state court to show the exercise of federal jurisdiction is appropriate." *Lewis v. Verizon Commc'ns, Inc*., 627 F.3d 395, 399 (9th Cir. 2010). Thus, because nothing in Kuxhausen's complaint "indicate[d] that the amount demanded *by each putative class member* exceed[ed] $25,000," it fell short of triggering the removal clock under Section 1446(b). *Carvalho*, 629 F.3d at 886.

*Kuxhausen*, 707 F.3d at 1141 (emphasis added). The Ninth Circuit reiterated this approach later that same year in *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013):

> Our best answer — and a likely sufficient answer — is that plaintiffs are in a position to protect themselves. If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained. 28 U.S.C. § 1446(b)(3). Such a document will trigger the thirty-day removal period, during which defendant must either file a notice of removal or lose the right to remove.

*Roth*, 720 F.3d at 1126. Further, *Harris* recognized that incentivizing Plaintiff in this way, and putting the burden of the Plaintiff to prove a procedural defect, does not violate the "strict construction of the removal statute:"[1]

> Finally, we are not unmindful of the canon that instructs that removal statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 85 L. Ed. 1214, 61 S. Ct. 868 (1941); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). Our interpretation of 28 U.S.C. § 1446(b) is consistent with the goal of the canon, which guards against premature and protective removals and minimizes the potential for a cottage industry of removal litigation. By assuring that removal occurs once the jurisdictional facts supporting removal are evident, we also ensure respect for the jurisdiction of state courts.

[1] If strict construction of the removal statute was still the rule—which it is not—as *Shamrock* is no longer the authoritative interpretation of 28 U.S.C. § 1441:

> But whatever apparent force this argument might have claimed when *Shamrock* was handed down has been qualified by later statutory development. At the time that case was decided, § 1441 provided simply that any action within original federal subject-matter jurisdiction could be removed. Fourteen years later, however, it was amended into its present form, requiring any exception to the general removability rule to be express. *See* Act of June 25, 1948, § 1441(a), 62 Stat 937 (authorizing removal over civil suits within the district courts' original jurisdiction "except as otherwise expressly provided by Act of Congress"); *see also* 28 U.S.C. § 1441 [28 USCS § 1441] (historical and revision notes). Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception. As *Shamrock* itself said, "the language of the Act . . . evidence[s] the Congressional purpose[.]

*Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697-698 (2003).

*Harris*, 425 F.3d at 698. In short, the best way to avoid a motion to remand being filed in every case is to adhere strictly to the bright line rule articulated in *Harris*. If plaintiffs plead they are seeking more than $75,000, then there is jurisdiction. If plaintiffs plead they are not seeking more than $75,000, then there is not. Without such incentives, the pleadings will remain ambiguous and defendants and courts will continue to have to determine what plaintiffs are seeking, while plaintiffs sit on the sideline.

Such is the case here and, accordingly, GM responds to Plaintiff's amount in controversy challenge with evidence and argument to show that the amount in controversy "more likely than not" exceeds the $75,000 jurisdictional threshold.

**BACKGROUND FACTS**

On December 28, 2019, Plaintiff purchased a 2021 Chevrolet Colorado. Compl. (Dkt. 1-1), ¶¶ 6, 9. Plaintiff alleges the vehicle was defective and GM failed to fulfill its warranty obligations. Compl. ¶¶ 12, 14. Plaintiff asserts claims arising under the Song-Beverly Act. *See generally* Compl. For his Song-Beverly claims, Plaintiff seeks "actual damages, a civil penalty of up to two times *actual* damages, and attorney's fees. Compl. ¶¶ 17, 24, 28, and Prayer for Relief (c).

## I. <u>LEGAL STANDARD</u>

Congress has prescribed to federal courts original and removal jurisdiction to cases and controversies between citizens of different states where the matter in controversy exceeds the sum or value of $75,000. 28 U.S.C. §§ 1332; 1441. Diversity jurisdiction is not subject to judicial discretion. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 356 (1988) ("The court has diversity jurisdiction over the case, which is not discretionary.").

In response to a subject matter jurisdiction challenge, the removing defendant may be subject to one of three burdens of proof, depending on an initial evaluation of the complaint. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). Where the complaint is "ambiguous" or "indeterminate" as to subject matter jurisdiction, the defendant has the burden to establish "by a preponderance of the

evidence" that subject matter jurisdiction exists. *Id.* As Plaintiff concedes, the Complaint here is indeterminate as to the amount in controversy. Accordingly, GM must show by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Id.*

## II. <u>A PREPONDERANCE OF THE EVIDENCE SHOWS THAT THE AMOUNT IN CONTROVERSY EXCEEDS $75,000</u>

Plaintiff does not challenge the complete diversity of the parties and therefore, no further evidence is required on that component of diversity jurisdiction. *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019) (reasoning that defendant was not required to produce evidence of diversity of citizenship where Plaintiff did not challenge the truth of the citizenship allegations in notice of removal).

The Ninth Circuit has held that the amount in controversy includes all amounts "'at stake' in the litigation, whatever the likelihood that [plaintiff] will actually recover them." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). The Ninth Circuit has also specifically included attorney's fees and penalties at stake even where plaintiff's ability to recover them is uncertain. *Guglielmino*, 506 F.3d at 698 (finding amount in controversy satisfied even though trial court "could not be certain that plaintiffs would recover *any* attorney's fees or punitive damages.") (emphasis in original).

Here, Plaintiff seeks three categories of damages for his state law claims under the Song-Beverly Act: (1) actual damages; (2) civil penalties; and (3) attorney's fees.

### A. Actual Damages

Calculating actual damages under the Song-Beverly Act requires a deduction of the value "directly attributable to use by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B)-(C). The mileage offset is derived by determining the first *relevant* repair, then taking the number of miles driven before that, dividing by 120,000 and multiplying that figure by the cash price of the vehicle. *See Stupin v. Gen. Motors LLC*, No. 2:23-cv-06943-SVW-MAA, 2024 WL 811706, at *2 (C.D. Cal. Feb. 27, 2024) ("Neither party has

provided sufficient information for the Court to use the [mileage offset] formula included in the Song-Beverly Act to apply the Act's reduction."); *see Schneider v. Ford*, 756 Fed. App'x. 699, 701, n.3 (9th Cir. 2018).

Further, this case was filed after January 1, 2025, so it falls under the Song-Beverly amendments (recently enacted California Assembly Bill 1755), which expanded the formula for actual damages in the Song-Beverly context, requiring additional statutory offsets. Accordingly, in addition to GM having to assess and deduct the mileage offset, *Schneider*'s reasoning requires that the following be considered in the AIC calculus: negative equity (Cal. Code Civ. Proc. section 871.27(c)), manufacturer's rebate (*id.*, section 871.27(d)), any third party sold optional equipment (*id.*, section 871.27(b)), and unpaid financing (*id.*, section 871.26(f)).

Here, Plaintiff purchased a 2021 Chevrolet Colorado with 25 miles on the odometer for $29,668.16. *See* Declaration of Karyn L. Ihara ("Ihara Decl."), Ex. A (RISC). In assessing the various vehicle complaints and what this case might potentially be based on, GM noted that on or around July 18, 2022, with 23,251 miles on the odometer, Plaintiff presented the vehicle to a dealership for repair of the defect claim he appears to be pursuing here. *See* Ihara Decl., ¶ 3, Ex. B (Repair History Summary). Plaintiff's use of the Subject Vehicle prior to the discovery of this alleged nonconformity was 25,226 miles. Dividing this number by 120,000 and multiplying this by the cash price of the Subject Vehicle—$27,017.00—results in an estimated mileage offset of $5,229.14. Additionally, GM identified other offsets for optional third-party contracts and rebates amounting to a total of $1,000.00. Ihara Decl., Ex. A; Code Civ. Proc. § 871.27. Plaintiff has not yet produced loan payment history for the purchase of the subject vehicle. However, based on the loan terms in the purchase agreement, Plaintiff is estimated to have approximately zero (0) payments remaining as of removal. While this value is not certain without Plaintiff's loan payment history, the estimate is a "reasonable assumption" based on the purchase agreement and satisfies the preponderance-of-the-evidence standard as to the required unpaid financing offset.

*Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019) ("[W]hen a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions."); but *see Kuxhausen*, 707 F.3d at 1141, n.3 ("It bears repeating that whether a defendant can establish that federal jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin."). Thus, the estimated deductible unpaid financing at issue is $0. Accordingly, by a preponderance of the evidence, the "actual" damages at issue here is **$23,439.02.**[2]

### B. Proof of Liability Is Not a Prerequisite to Including Civil Penalties in the Amount in Controversy

Once actual damages are calculated, it is appropriate to consider civil penalties if the operative complaint alleges willful violation of the Song-Beverly Act. *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1009 (citing *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) and *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 (9th Cir. 2000)). The maximum civil penalty available must be considered in the amount in controversy. *Arias v. Residence Inn*, 936 F.3d 920, 927 (9th Cir. 2019) ("[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover.") (emphasis in original). It is improper to consider the likelihood of recovery in evaluating the amount in controversy. *Id.* ("Where a removing defendant has shown potential recovery '*could* exceed $5 million and the [plaintiff] has neither acknowledged nor sought to establish that the class recovery is potentially any less,' the defendant 'has borne its burden to show the amount in controversy exceeds $5 million.'") (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (emphasis in original)).

[2] GM notes that this number is more precise than the $21,263.48 estimate in the notice of removal, including analysis of unpaid financing based on confirmation that Plaintiff had paid off all remaining financing on the vehicle. *See Schneider*, 756 Fed. Appx. 699, 700-701 (notice of removal only requires plausible estimates of offsets, which may be supplemented with additional evidence on challenge).

Some district courts have held that a removing defendant must prove its own liability for civil penalties—by the same legal standard required to prove liability at trial—before it will include civil penalties in the amount in controversy. *See, e.g.*, *Makol v. Jaguar Land Rover N. Am., LLC*, No. 18-cv-03414-NC, 2018 WL 3194424, at *5 (C.D. Cal. June 28, 2018) ("Jaguar has made no showing that such a civil penalty is *more likely than not* to be awarded here.") (emphasis added). These decisions rely on multiple unpublished district court cases that trace their roots to *Zawaideh v. BMW of North Am., LLC*, No. 17-CV-2151 W-KSC, 2018 WL 1805103, at *4–8 (S.D. Cal. Apr. 17, 2018). Plaintiff's counsel suggests the Court should follow that approach here, but *Zawaideh* was wrongly decided.

In *Zawaideh*, the district court disagreed with *Brady* and held that a removing defendant cannot satisfy its burden to prove the amount in controversy by merely pointing to civil penalties sought by the plaintiff in the complaint. *Id.* at *5-6. Unlike *Brady*, the *Zawaideh* court did not rely on Ninth Circuit precedent, but rather another district court case: *Conrad Associates v. Hartford Accident & Indemnity Company*, 994 F.Supp. 1196 (N.D. Cal. 1998). And, in turn, the *Conrad* case relied on a decision from the Fifth Circuit in *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995).[3] A close look at *De Aguilar* and *Conrad* reveals the legal error underlying the holding in *Zawaideh*.

In *De Aguilar*, the plaintiffs specifically alleged that their damages were less than $50,000. *Id.* at 1408 ("[P]laintiffs' state court petition averred that they were seeking no recovery in excess of $50,000.") The court relied on *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) for the proposition that "[u]nless the law gives a different rule, the sum claimed by the plaintiff controls if their claim is apparently made in good faith." *Id.* The court proceeded to analyze whether defendant's evidence met the applicable burden of proof to show bad faith, as dictated by *St. Paul*

[3] *Conrad* also relied on *Terry v. Service America Corp.*, 990 F.Supp. 476 (N.D. Mass. 1997). However, *Terry* cites *De Aguilar* as the foundational authority. *Id.* at 477.

*Mercury*. *Id.* In determining the magnitude of that burden, the court noted that the removal scenario there was not "typical." *Id.* The court explained that the burden of proof is different where the complaint does not allege a specific amount of damages, as is the case here. *Id.*

Likewise, in *Conrad*, the complaint at issue also alleged a specific amount of damages that was below the jurisdictional threshold—$56,500.00. *Conrad*, 994 F.Supp. at 1198. Importantly, after *Conrad*, the Ninth Circuit expressly held that the heightened "legal certainty" test applies where a plaintiff alleges that he seeks an amount below the jurisdictional threshold. *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994 (9th Cir. 2007). The Ninth Circuit also held that an entirely different standard applies when the complaint is indeterminate, as is the case here. *Guglielmino*, 506 F.3d at 699. Likewise, in *Conrad* and *De Aguilar*, defendant had to disprove what Plaintiff had affirmatively alleged, and therefore, the analysis of defendant's burden cannot be analogized to a case where a plaintiff's allegations are ambiguous because the underlying burden is distinct.

In *Zawaideh*, unlike in *Conrad* and *De Aguilar*, the complaint did not specify a damage figure, nor did it specify that the amount in controversy was less than the jurisdictional threshold. *Zawaideh*, 2018 WL 1805103, at *4 ("Here, the Complaint does not specify a damage figure.") Nevertheless, the court erroneously applied the evidentiary burden articulated in *Conrad*—a standard applicable only to cases where plaintiff has alleged that the amount in controversy is less than the jurisdictional threshold—and concluded that the removing defendant had failed to meet its burden because it had not produced evidence to show that a civil penalty was likely to be awarded. *Id.* at *6 ("[T]his court agrees with the approach in *Conrad*. Rather than simply assume that because a civil penalty is available, one will be awarded, the defendant must make some effort to justify the assumption.") Accordingly, the holding in *Zawaideh* is fundamentally flawed because it relies on a case that has nothing to do

with the applicable burden when the complaint is *ambiguous* as to the amount in controversy.

There should be no question that GM disputes liability for civil penalties and considers those allegations to be wholly without merit and frivolous. But that fact is irrelevant to what amount is in controversy based on Plaintiff's Complaint. Indeed, the Ninth Circuit has explained that even the value of claims that are subject to dismissal after removal should be included in the amount in controversy. *Chavez*, 888 F.3d at 417 ("[W]hen the amount in controversy is satisfied at removal, any subsequent amendment to the complaint or partial dismissal that decreases the amount in controversy below the jurisdictional threshold does not oust the federal court of jurisdiction.")

### C. Civil Penalties

Even if the Court were to follow *Zawaideh*, GM produces evidence to establish that civil penalties are more likely than not "at stake" in this case. First, Plaintiff has done more than merely state that he is seeking civil penalties—he specifically alleges willfulness. Compl., ¶¶ 17, 24, 28. Additionally, GM's investigation also concluded that the Subject Vehicle was presented for repair at least 8 times. Ihara Decl., ¶ 3, Ex. B. Based on GM's counsel's prior experience, plaintiffs pursue civil penalties when there are records of multiple repair presentations. Ihara Decl., ¶ 8. This provides "reasonable grounds" to assume that civil penalties are at stake. *See Arias*, 936 F.3d at 927 (explaining that defendant need only show "reasonable grounds" for estimated damages).

Second, the *amount* of civil penalties at stake is non-speculative. Plaintiff's alleged actual damages are reasonably estimated, and once actual damages (with offsets incorporated) are determined, it is appropriate to consider civil penalties. Applying the 2.0-times maximum civil penalties available as a matter of law brings the total damages to **$<u>70,317.06</u>**. *See id.* (holding maximum included in amount in controversy where "defendant has shown potential recovery *could* exceed [the jurisdictional threshold] and

the plaintiff has [not] sought to establish that [] recovery is potentially any less[.]") (quoting *Lewis*, 627 F.3d at 400) (emphasis in original)).

Therefore, by a preponderance of the evidence, the amount in controversy exceeds $75,000.

**D. Attorney's Fees**

The Song-Beverly Act allows for the recovery of attorney's fees. Cal. Civ. Code § 1794(d). After preliminary settlement negotiations with Plaintiff's counsel, GM's counsel determined that this case was unlikely to settle. Accordingly, the amount in controversy also includes reasonable estimates of past, present, and future attorney's fees. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

Here, based on GM's counsel's prior experience with fees sought by Plaintiff's counsel, Prestige Legal Solutions, and based on Plaintiff's recent demands in dozens of recent motions to remand (*see Gonzalez v. GM LLC*, No. 2:25-cv-07044-MCS-AS, 2025 WL 2591432, at *2, n. 2 (C.D. Cal. Sept. 8, 2025), it is more likely than not that Plaintiff will seek at least $**33,300.00** in attorney's fees, even if this case resolves before trial. Ihara Decl., ¶¶ 5-6. It is also more like than not that Plaintiff will seek at least $**9,500** for costs incurred in this action prior to resolution.

Therefore, by a preponderance of the evidence, the amount in controversy—after taking into account actual damages, civil penalties, and attorney's fees—well exceeds $75,000.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand should be denied.

Dated: November 6, 2025 SHOOK, HARDY & BACON L.L.P.

By: */s/ Karyn L. Ihara*
Rodrigo Salas
Karyn L. Ihara
Arlene Bakirci
Angelica S. Anguiano

Attorneys for Defendant
GENERAL MOTORS LLC

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendant General Motors, LLC, certifies that this brief contains 3,800 words, which complies with the word limit set by Local Rule 11-6.1.

Dated: November 6, 2025

By: /s/ *Karyn L. Ihara*
Karyn L. Ihara

Attorney for Defendant
GENERAL MOTORS LLC